Margin: *Ayer v. Ayer.*

---

## Thomas Burlock *versus* William A. Taylor *et al.* and Trustees.

An assignment of personal property by an insolvent debtor in New York, which is valid under the laws of that State as against dissenting creditors, is valid against a subsequent attachment by a citizen of New York, of property in Massachusetts belonging to the debtor, although such assignment would be invalid under the laws of Massachusetts as against dissenting creditors.

The trustees, Munson and Barnard, upon examination in the Court of Common Pleas, disclosed an assignment of the property of the principal defendants, which was in their hands, to Ebenezer J. and Henry White. It appeared by the an-

swers of the trustees, that this amounted to the sum of $606·59, and consisted of merchandise consigned to them for sale, and on which they had made advances ; and that at the time of the assignment and of the service of the writ upon them, the sales of the merchandise had not been sufficient to reimburse them for such advances.

The plaintiff filed a motion, pursuant to *St.* 1817, *c.* 148, setting forth, that he believed the assignment was made without sufficient consideration and was legally insufficient to pass the property, and to defeat his attachment, and praying that the assignees might be summoned in to become parties to the action, for the purpose of trying the validity of the assignment. The assignees appeared in pursuance of such a summons.

The parties submitted the case to the Court upon an agreed statement of facts.

The plaintiff, the principal defendants, and the assignees, were all citizens of the State of New York. On January 16, 1829, the assignees were liable as indorsers of drafts &c. of the principal defendants, then outstanding and not due, to the amount of $24,020·03. The defendants were indebted to the plaintiff on notes of hand, in the sum of $2586·22, which was provided for by the assignment among the unpreferred debts, and also for goods sold and delivered on January 13, 1829, in the sum of $1201·65, which was not included in the schedules annexed to the assignment. The present action was brought to recover this last sum.

On January 16, 1829, the principal defendants, being insolvent, executed in New York the assignment in question, which purported to assign certain goods, effects and credits out of the State of New York, to the assignees, in trust, in the first place, to indemnify and pay in full the assignors' indorsers and those persons to whom they were indebted for borrowed money, and to distribute the residue among their other creditors *pro rata.* The assignment required none but the assignors and assignees to become parties ; and no release or condition was inserted therein. The assignees, on the same day, assented to and accepted the deed and the trusts. On the 18th of the same month, the trustees received notice of the assignment, with an order from the principal defendants to

Bullock
*v.*
Taylor

hold the merchandise subject to the directions of the assignees and to account to them for the proceeds. On the 23d day of the same January, the plaintiff brought this suit, and summoned Munson and Barnard as trustees. At this time the liabilities of the assignees amounted to the sum of $18,147.

The whole value of the property received by the assignees, or which could ever be received, including the amount in the hands of the trustees, amounted to the sum of $11,356·34, and the amount of the expenses attending the trusts was $1412·87. The whole property was insufficient to pay the New York creditors. The amount which the assignees became eventually liable to pay, as indorsers, was $3196.22.

By the laws of the State of New York, the assignment in question was valid, without the assent of other creditors than the assignees, as against the plaintiff's attachment, and effectually transferred the property to the assignees for their use and that of those creditors of the assignors, who claimed the benefit of such assignment.

If the Court should be of opinion, that the assignment was valid and effectual as against the plaintiff's attachment of the goods, effects and credits in the hands of the trustees, judgment was to be rendered in favor of the assignees, and the trustees were to be discharged.

*Fletcher* and *Bartlett*, for the assignees, to the point, that *March 12th* if the assignment was valid as against the plaintiff in New York, where he resided, it was valid as against an attachment by him of property in this State, and that it will be enforced here unless it be to the manifest injury of our own citizens, cited *Blake* v. *Williams*, 6 Pick. 286 ; *Lord* v. *Brig Watchman*, 8 Amer. Jurist, 284 ; Angell on Assignments, 58 ; 2 Kent's Comm. 364 ; Story on Confl. of Laws, 315 ; *Ingraham* v. *Geyer*, 13 Mass. R. 146 ; *Fox* v. *Adams*, 5 Greenl. 245 ; *Bholen* v. *Cleveland*, 5 Mason, 174.

*C. J.* and *E. J. Loring*, for the plaintiffs, on the same point, cited *Ingraham* v. *Geyer*, 13 Mass. R. 146 ; Story on Confl. of Laws, 349, 318, and cases cited ; *Blake* v. *Williams*, 6 Pick. 286 ; *Fox* v. *Adams*, 5 Greenl. 245 ; and to the point, that if the assignment was invalid against an attachment of property here by a citizen of this State, it must be invalid as against the

Burlock
v.
Taylor.

plaintiff's attachment, under the clause in the constitution of the United States, which provides, that " the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," *Barrell* v. *Benjamin*, 15 Mass. R. 354 ; 3 Story's Comm. on Constit. 673, 674 ; *Smith* v. *Spinola*, 2 Johns. R. 198.

*March 23d*

SHAW C. J. delivered the opinion of the Court. The trustees, Munson and Barnard, having by their answers acknowledged effects of the principal defendants in their hands, and by the same answers having disclosed an assignment of the same effects to E. J. and H. White, in New York, under the circumstances stated in the answers, and notice thereof given by the assignees to themselves before the service of the trustee process, the assignees were summoned in, under the statute, to interplead with the plaintiffs, and to put in issue and determine the due execution, validity and legal effect of such assignment. The assignees having appeared, and the parties having agreed to a statement of facts, some questions as to the regular course of proceeding under this statute, which were made at the trial, have become immaterial.

The great question considered in the present case, was, whether the effects in the hands of the trustees, being resident merchants domiciled in this State, were well conveyed by the assignment made in New York, it being valid according to the laws of that State, so as to secure the benefits of the assignment to the assignees themselves and those creditors of the assignors, who claim that benefit, against the plaintiff, another creditor also a citizen of New York, claiming to hold under a legal process of attachment, made pursuant to our laws. The property, as appears by the trustees' answers, consisted of merchandise consigned to them for sale, on which they had made advances ; and at the time of the assignment and attachment the goods had not been sold, to an amount sufficient to reimburse their cash advances ; and it further appears, that the assignment was made at New York, on January 16, 1829 ; that notice of it was given to the trustees on the 18th, with an order from the consignors to them, to hold the goods to the use and subject to the order of the assignees, and to account to them for the proceeds, and that this attachment was

made on the 23d of the same month.   A question was made, whether the effects were so situated as, conformably to former decisions, to be liable to attachment, there being no debt due, and the goods subject to *a lien* for advances, but by the decision of the other question, this becomes immaterial.   As between the parties, there being a contract of sale, and notice and delivéry of the order being a good constructive delivery, the property passed by the conveyance.   It could only be uefeated, upon the ground that it was not good as against the creditors of the assignor.

This is not a new subject of judicial inquiry ; the same question was before the Court, in two cases, at the late term m Worcester ; in which it was decided, that an assignment made in another State, conformably to the laws of that State, and good and effectual to pass personal property there, was effectual to transfer the personal property of the assignor, being at the time within the limits of this State, being season-ably delivered and taken possession of, as against creditors, being citizens of the same State where the assignment was made, claiming the same by a subsequent attachment made here.   *Daniels* v. *Willard, ante*, 36 ;   *Whipple* v. *Thayer, ante*, 25.

The assignments in those cases were made in Rhode Island, and the same objection was taken there as is now taken here, that by the law of this Commonwealth the assignment, if made here, would not have been valid.   It was early decided in this State, and has been long held, that an assign-ment of property made by an insolvent debtor to a trustee, in trust for his creditors, such creditors not being parties to the conveyance nor assenting to the transaction, is not valid to hold the property against an attaching creditor.   But in many other States it has been held, that such a conveyance is valid, to hold the property against a creditor claiming by a posterior attachment.   And upon this ground it was held, that as against a citizen of Rhode Island, bound by its laws, such an assig ment must be deemed good to pass property so situated as to be open to attachment in this Commonwealth.

Those decisions are directly applicable to the present case. As a general rule, personal property, including debts and

Burlock
v.
Taylor.

choses in action, has no *situs* ; it is a right and is said figura tively to follow the person of the owner, and therefore such a transfer by the owner, as will be deemed good conformably to the law of the place of the owner's domicil, will be an effectual and valid transfer and change of the property to all purposes. The right of acquiring, holding and transferring personal property, is not considered as depending merely upon municipal law, though municipal law may regulate it ; but it is regarded as one of those general rights, which is . recognised wherever commerce or civilization exists. Among the most prominent and essential ingredients in the nature of property, is the right and power of the owner to dispose of it, at his own will. It is upon grounds like these, that sales and dispositions of property made in one State or country, are respected in others, and it would be hardly possible that commerce or intercourse among States could exist without them. The principle, therefore, upon which the general rule above stated is founded, is this, that after the goods or choses in action have been thus transferred by a lawful act of the owner, although the goods themselves may be within reach of the attaching officers, yet the interest or right of property of the debtor being gone, there is nothing for the attachment to operate upon. This rule is of course subject to some exceptions, one of which is, that it shall not be enforced to the manifest injury of our own citizens. How far the rule would apply to citizens of the United States but not of the State where the assignment was made, or to strangers, it is not necessary to decide ; nor do we give any opinion upon the question, whether under the exception stated such an assignment would be held invalid against the attachment of creditors, citizens of our own State. On this subject there are conflicting authorities. *Ingraham* v. *Geyer*, 13 Mass. R. 146 ; *Fox* v. *Adams*, 5 Greenl. 248 ; *Dawes* v. *Head*, 3 Pick. 128 ; *Blake* v. *Williams*, 6 Pick. 286. * In the present case, it was argued, that the assignment was good against the attaching creditor, a citizen of the State of New York, and it was not necessary to the case to maintain its validity

---

* See also *Fall River Iron Works* v. *Croade & Tr.* 15 Pick. 11.

further. It is satisfactorily proved in the case, that by the law of the State of New York, the assignment in question was valid and effectual to pass the property ; and as among various creditors, all inhabitants and citizens of New York, all equally entitled to the benefits and privileges, and subject to the duties and obligations created by the laws of that State, those who were first in point of time, were preferable in point of right.

One of the grounds relied upon by the plaintiff, the attaching creditor, to take this case out of the general rule, is that found in the provision of the constitution of the United States, — " The citizens of each State shall be entitled to all privileges and immunities of citizens of the several States," — cited and recognised in *Barrell* v. *Benjamin*, 15 Mass. R. 354. We think neither the authority nor the principles of that case, can affect the present. That case turned on the right of a citizen of another of the United States, to sue in this State, it having been contended that such a citizen was a foreigner. The Court held, that he might bring his action in our courts against a foreigner, by force of the clause in question, in the same manner as a citizen of Massachusetts, whatever doubt there might be as to such right, if he were in fact a foreigner. But here the fact of his being a citizen of another State does not affect his privilege to sue and have the full use and benefit of our Courts, to seek and assert his legal rights ; but the principle goes to affect the right of action, as between him and other citizens of the same State, entitled to the same privileges.

The same principle has been applied in various instances, in giving or refusing effect to discharges under the insolvent laws of other States, holding them good, under certain limitations, against those who are citizens of the same State, where they are made, and not so against citizens of other States. *Ogden* v. *Saunders*, 12 Wheaton, 213 ; *Blanchard* v. *Russell*, 13 Mass. R. 1 ; *Betts* v. *Bagley*, 12 Pick. 572. And these are cases, it will be recollected, where the effect of the insolvent law is to discharge the contract, and not merely to exempt the person or property of the debtor from seizure ; laws of the latter kind affect the remedy merely, and in general

Burlock
v.
Taylor.

have only a local operation. Suppose a debtor discharged from his obligation by force of the insolvent laws of New York; the debtor and creditor being both inhabitants and citizens of that State, at the time the contract was made, at the time it fell due, and at the time of the proceedings under the insolvent law, such law having been made before the contract was made; it has been held in the cases cited, that such discharge would be valid here, should the parties or either of them afterwards become citizens of this State; but against a creditor, not a citizen of New York at the time the contract was made, it would not be valid; of course it would be enforced against a citizen of New York but not against a citizen of another State. But if the provision in the constitution could have the construction and go to the extent contended for, the privilege of suing and maintaining an action in such case, in our courts, should the debtor become an inhabitant of this State, ought to extend as well to a citizen of New York, as to a citizen of Massachusetts or any other State. But we think the answer would be the same; that the fact of his citizenship, under the circumstances, gave effect to the law, and put an end to his right of action, and such discharge of the right of action would avail the defendant, in all courts and places where the creditor could seek to enforce it.

The Court are of opinion, that the plaintiff cannot by his attachment hold the funds in the hands of the trustees, against the assignees, and that the trustees must be discharged.